Filed 8/11/26  Bates v. City of Temecula CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOHN GORDON BATES, III,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CITY OF TEMECULA,<br><br>    Defendant and Appellant. | D086590<br><br>(Super. Ct. No. CVSW2207919)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on July 20, 2026, be modified as follows:

On page 21, footnote 7, delete the following "and the concept of constructive notice" so that footnote 7 now reads:

> Bates's appellate brief does not mention the fact that the parties' trial counsel thoroughly discussed CACI No. 1103 during closing arguments.

There is no change in judgment.

Respondent's petition for rehearing is denied.

MCCONNELL, P. J.

Copies to:  All parties

Filed 7/20/26  Bates v. City of Temecula CA4/1 (unmodified opinion)
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOHN GORDON BATES, III, | D086590 |
| Plaintiff and Respondent, | (Super. Ct. No. CVSW2207919) |
| v. | |
| CITY OF TEMECULA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Riverside County, Raquel A. Marquez, Judge.  Reversed.

Richards, Watson & Gershon, T. Peter Pierce, Ezra Siegel, and Carlee I. Roberts for Defendant and Appellant.

Williams Iagmin and Jon R. Williams for Plaintiff and Respondent.


I

INTRODUCTION

The City of Temecula (the City) appeals an order granting a new trial after a jury found the City not liable for a dangerous condition on a public roadway that allegedly caused John Gordon Bates, III, to crash while riding his bicycle.  The trial court granted a new trial because it inadvertently failed

to instruct the jury with CACI No. 1103, which provides that a plaintiff in a dangerous condition case may prove the defendant had notice of the dangerous condition by demonstrating that the defendant had actual knowledge of the dangerous condition or, alternatively, by showing that the defendant reasonably should have known about the dangerous condition.

The City asks us to reverse the new trial order and reinstate the jury verdict. The City argues the trial court applied an incorrect legal standard when it granted a new trial and, furthermore, Bates suffered no prejudice from the instructional omission. In defense of the new trial order, Bates claims the court applied the correct legal standard and acted within its discretion when it impliedly found the instructional omission prejudiced him. He also contends the court committed an unrelated error warranting a new trial because it unintentionally provided the jury with a grayscale version of an exhibit that should have been printed partially in color.

We agree with the City that the instructional omission did not prejudice Bates. We also reject Bates's claim that the jury's receipt of a grayscale version of the exhibit constituted a prejudicial miscarriage of justice entitling him to a new trial. Therefore, we reverse the order granting a new trial, and remand the matter to the trial court with instructions to enter judgment for the City consistent with the jury verdict.

## II

## BACKGROUND

A. *The Bicycling Accident*

On the afternoon of March 7, 2022, Bates was riding his bicycle from his workplace at Camp Pendleton to his home in Temecula, 37 miles away. Towards the end of his ride, he traveled on a two-lane 1.5-mile road in Temecula called Rainbow Canyon Road. Bates reached the peak of a hill and

2

then began descending with the flow of traffic at a speed of about 25 miles per hour. As he descended, Bates allegedly felt the front of his bicycle suddenly dip into a crack or pothole in the road, causing him to pitch forward over his handlebars and land on the road. Bates was pulled to the roadside by bystanders and transported to a hospital where he was treated for injuries he sustained during the accident.

Due to the rapid speed at which Bates was travelling, the unexpected nature of the accident, and the existence of multiple cracks and potholes in the road, Bates was uncertain of the exact cause of his accident. He initially believed the cause was a crack in the road near where he came to rest after the accident. However, he later retained an accident reconstruction expert, who opined that the likely cause of the accident was a pothole located further uphill from Bates's final resting place. After Bates reviewed his accident reconstruction expert's analysis, he also came to believe his accident was caused by the pothole located uphill from his resting place. At trial, Bates simply maintained that his tire "went into something …. It went into a crack, one of the cracks in the road, one of the holes in the road."

B. *The Dangerous Condition Trial*

On November 23, 2022, Bates filed a single-count complaint against the City alleging a dangerous condition on public property in violation of Government Code section 835. The case proceeded to a jury trial.

One of the central issues at trial was whether the City had notice of the crack or pothole in the road that allegedly caused Bates's accident. One witness who testified about this issue was Rodney Tidwell, the Maintenance Manager for the City's Public Works Department. Tidwell testified that the City retains a third-party vendor to drive the City's roads and provide the City with ratings for the roads. The vendor prepares a Pavement Condition

3

Index (PCI) with scores for each road ranging from 0 to 100. Roads with scores ranging from 25 to 40 are poor roadways that may need thick overlays or extensive maintenance and repairs. Roads with scores ranging from 0 to 25 are very poor roadways for which full reconstruction is recommended. According to Tidwell, a PCI score is given for an entire road and not a specific subsection of the road.

The PCI score for Rainbow Canyon Road ranged from 10 to 30, and Tidwell testified he has been "generally aware" of the road's PCI scores since 2014. However, prior to Bates's accident, Tidwell had never received a work order request for a roadway condition near the area in which Bates's accident occurred. He was also unaware of any other bicycling accidents in the area prior to Bates's accident.

Another related issue that arose during trial was the duration of time the crack or pothole at issue had existed before the accident, which was relevant to whether the City had constructive notice of the dangerous condition. Bates testified he drove on Rainbow Canyon Road three times per week and rode his bike on the road about 40 times in the 10-month period preceding his accident. In total, he claimed he had been on the road more than 100 times during that timeframe. Even so, Bates testified he never saw or noticed the crack or pothole. He also did not know how or when the crack or pothole originated.

During the jury instruction conference, the parties stipulated to several pattern instructions pertinent to Bates's dangerous condition claim, including CACI No. 1100 ("Dangerous Condition on Public Property—Essential Factual Elements"), CACI No. 1102 ("Definition of 'Dangerous Condition' "), CACI No. 1103 ("Notice"), and CACI No. 1104 ("Inspection System"). When the court later instructed the jury, however, it inadvertently omitted CACI

4

No. 1103.[1]  CACI No. 1103 states that the plaintiff can satisfy the element of notice by establishing that the defendant had either actual knowledge of the dangerous condition or, alternatively, constructive knowledge of the dangerous condition.[2]  No party objected or notified the court about its unintentional failure to instruct the jury with CACI No. 1103.

Although the court did not instruct the jury with CACI No. 1103, Bates's trial counsel discussed the difference between actual notice and constructive notice during closing arguments, informed the jury that Bates could satisfy the element of notice if he established either type of notice, and claimed the City was liable because it had both actual notice and constructive notice.  Thereafter, during the City's closing arguments, defense counsel read CACI No. 1103 aloud to the jury and displayed the text of the instruction to the jury in a PowerPoint presentation.  Like Bates's trial counsel, the City's trial counsel reiterated the difference between actual notice and constructive

---

[1]     The parties waived a court reporter for the reading of the jury instructions and were initially uncertain whether the court omitted CACI No. 1103 from the instructions given to the jury.  However, for purposes of this appeal, the City assumes the court did not instruct the jury with CACI No. 1103.

[2]     CACI No. 1103 states, "[Name of plaintiff] must prove that [name of defendant] had notice of the dangerous condition before the incident occurred.  To prove that there was notice, [name of plaintiff] must prove: [¶] [That [name of defendant] knew of the condition and knew or should have known that it was dangerous.  A public entity knows of a dangerous condition if an employee knows of the condition and reasonably should have informed the entity about it.] [¶] [or] [¶] [That the condition had existed for enough time before the incident and was so obvious that the [name of defendant] reasonably should have discovered the condition and known that it was dangerous.]."

5

notice.  The City's trial counsel also argued extensively that the evidence showed the City was not liable because it did not have either form of notice.

After two days of deliberations, the jury returned a verdict finding the City was not liable for a dangerous condition.  On the special verdict form, the jury (by a vote of 9-3) found the roadway was in a dangerous condition at the time of Bates's injury and (by a vote of 9-3) the dangerous condition created a reasonably foreseeable risk that this kind of injury would occur.  However, the jury found (by a vote of 10-2) the City did not have notice of the dangerous condition for a long enough time to have protected against the dangerous condition.  Because the jury found the City did not have notice of the dangerous condition, it concluded the City was not liable and left several additional questions unanswered on the special verdict form.

C. *The New Trial Proceedings*

Bates moved for a new trial on two grounds, only one of which is relevant to this appeal.  Pertinent here, Bates argued there was an irregularity in the proceedings (Code Civ. Proc., § 657, subd. (1)), because the court had admitted a predominately grayscale map of the City that included a color-coded version of the PCI index and displayed Rainbow Canyon Road in the color corresponding to its PCI scores; however, the version of the exhibit that was given to the jury for its deliberations was entirely

6

grayscale.[3]  According to Bates, the jury was likely confused by its receipt of a fully grayscale version of the exhibit.[4]

The City opposed Bates's motion for a new trial.  The City argued a new trial was unwarranted because Bates did not provide the court with a hard copy of the color exhibit for the jury; therefore, he forfeited his argument concerning the jury's receipt of a grayscale version of the exhibit.  The City also argued the grayscale exhibit could not have caused jury confusion or otherwise prejudiced Bates because Tidwell (the only witness who discussed the PCI index) did not testify about the map index or the color coding on the admitted version of the exhibit.

At the hearing on the new trial motion, the court rejected Bates's arguments for a new trial.  The court found Bates waived his argument concerning the use of a grayscale version of the exhibit because the court clerk and the parties' counsel had jointly reviewed the list of exhibits that were to be provided to the jury, and Bates's trial counsel did not object despite the fact that the map was described on the exhibit list as a grayscale map.  The court added, "I'm not seeing this as a real issue because it was fully testified to in court."

---

[3]    Subsequent undesignated statutory references are to the Code of Civil Procedure.

[4]    Bates's trial counsel filed a declaration averring that "multiple" jurors told him the jury's receipt of a fully grayscale version of the exhibit delayed its deliberations and caused the jury to ask for a readback of Tidwell's testimony.  The court sustained the City's objections to these averments on the grounds that they were hearsay and they improperly reflected jurors' thought processes.

7

Nevertheless, the trial court, acting sua sponte, raised a separate and unbriefed issue that, in the court's view, potentially warranted a new trial—the court's inadvertent failure to instruct the jury with CACI No. 1103. The court opined that it should have read the instruction, but it was unsure whether its apparent failure to give the instruction had prejudiced Bates. Therefore, the court solicited supplemental briefing from the parties about whether the instructional omission warranted a new trial.

The City filed a supplemental brief arguing the court's failure to provide CACI No. 1103 did not require a new trial because: (1) Bates did not object to the instructional omission; (2) both the instruction and the concept of constructive notice were discussed at length during the parties' closing arguments; and (3) the evidence did not support a finding that the City had constructive notice of the dangerous condition. Bates, on the other hand, filed a supplemental brief arguing the instructional omission required a new trial because the length of the jury's deliberations suggested that it viewed the notice issue as a close call and, moreover, the jury was directed to rely solely on the court's given instructions.

The court held a second hearing and permitted the parties to file additional supplemental briefing. The City filed a supplemental brief reiterating its position that the error did not prejudice Bates because the evidence showed the City did not have actual or constructive notice of the dangerous condition, the jury was given other instructions referencing notice (CACI Nos. 1100 and 1104), the parties discussed CACI No. 1103 during closing arguments, and the jury did not ask the court any questions about the notice instruction during its deliberations. Meanwhile, Bates filed a supplemental brief arguing he suffered prejudice because the omission of an instruction on an essential element of a claim is inherently prejudicial, the

8

given instructions did not adequately inform the jury about the concepts of actual notice and constructive notice, and the jury was advised to follow the given instructions.

After receiving these submissions, the trial court issued a terse order granting a new trial. The order stated, in relevant part, "The Motion for New Trial is granted. [¶] The court cannot find by a preponderance of the evidence that the jury was properly instructed on the issue of notice."

### III

### DISCUSSION

The City challenges the order granting the motion for a new trial. The City contends the trial court erred because it applied an incorrect legal standard when ruling on the motion. Alternatively, the City argues the new trial order was in error because Bates was not prejudiced by the instructional omission. Bates disputes these arguments and additionally claims that a new trial was appropriate due to the jury's receipt of the grayscale version of the PCI map, rather than a version of the map that was partially in color.

For reasons we shall explain, we conclude the trial court applied the correct legal standard when it ruled on the motion for a new trial. However, we agree with the City that Bates could not have been prejudiced by the instructional error. Further, we reject Bates's contention that the jury's receipt of a grayscale exhibit caused a prejudicial miscarriage of justice. Because the court erred when it impliedly found that Bates was prejudiced by the instructional omission, and the new trial order cannot be affirmed on other grounds, we reverse the order granting the motion for a new trial.

A. *Government Code Section 835*

Government Code "[s]ection 835 is part of the Government Claims Act (§ 810 et seq.). That act—originally known as the Tort Claims Act—defines

9

the liabilities and immunities of public entities.  [Citations.]  The act's purpose is ' "to confine potential governmental liability to rigidly delineated circumstances." ' [Citation.]  [Government Code] [s]ection 835 'sets out the exclusive conditions under which a public entity is liable for injuries caused by a dangerous condition of public property.' " (*Restivo v. City of Petaluma* (2025) 111 Cal.App.5th 267, 274 (*Restivo*).)

"To establish liability under [Government Code] section 835, a plaintiff must prove that, at the time of injury, a dangerous condition existed on public property, that it created a reasonably foreseeable risk of the kind of injury suffered, and that it proximately caused the injury.  [Citation.] [Government Code] [s]ection 830 defines a dangerous condition of property as one creating a substantial risk of injury when the property is used with due care. … '[A] dangerous condition exists when public property is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself.  [Citations.] ... [P]ublic property has also been considered to be in a dangerous condition "because of the design or location of the improvement, the interrelationship of its structural or natural features, or the presence of latent hazards associated with its normal use." ' [Citation.] The fact that an accident occurs is not in and of itself evidence that public property was in a dangerous condition at the time of injury." (*Restivo, supra*, 111 Cal.App.5th at pp. 274–275.)

"A plaintiff must also prove that a public employee's negligence or misconduct created the dangerous condition, or that the public entity had actual or constructive notice of the condition a sufficient time before the injury to protect against it.  [Citations.]  ' "To establish actual notice, '[t]here must be some evidence that the employees had knowledge of the particular dangerous condition in question'; 'it is not enough to show that the [public

10

entity's] employees had a general knowledge' that the condition can sometimes occur." [Citation.] To establish constructive notice, the plaintiff must prove "the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." ' " (*Restivo, supra*, 111 Cal.App.5th at p. 275.)

B. *Standard of Review*

"The authority of a trial court in this state to grant a new trial is established and circumscribed by statute. [Citation.] Section 657 sets out seven grounds for such a motion: (1) 'Irregularity in the proceedings'; (2) 'Misconduct of the jury'; (3) 'Accident or surprise'; (4) 'Newly discovered evidence'; (5) 'Excessive or inadequate damages'; (6) 'Insufficiency of the evidence'; and (7) 'Error in law.' " (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 633 (*Oakland Raiders*).)

When a trial court grants a motion for a new trial, it must specify the statutory ground or grounds upon which the new trial is granted—e.g., an irregularity in the court proceedings, jury misconduct, etc. (§ 657.) "A statement of grounds that reasonably approximates the statutory language is sufficient." (*Oakland Raiders, supra*, 41 Cal.4th at p. 634.) "[T]he ground for a new trial is adequately specified if the intention of the court is clear." (*Jones v. Citrus Motors Ontario, Inc.* (1973) 8 Cal.3d 706, 710 (*Jones*).)

A court granting a new trial must also specify the reason or reasons for the ruling in its order or in a written statement of reasons entered within 10 days of the order. (§ 657; see *Sanchez-Corea v. Bank of America* (1985) 38 Cal.3d 892, 899 ["under section 657, the grounds for the new trial must be stated in the order. The reasons may also be stated in the order, but the trial court has the option of filing a statement of the reasons at a later time"].)

11

The statement "should be specific enough to facilitate appellate review and avoid any need for the appellate court to rely on inference or speculation." (*Oakland Raiders, supra*, 41 Cal.4th at p. 634.)  Nevertheless, "[t]o avoid overtaxing our already burdened trial courts, it [is] … sufficient if the judge who grants a new trial furnishes a concise but clear statement of the reasons why he finds one or more of the grounds of the motion to be applicable to the case before him." (*Mercer v. Perez* (1968) 68 Cal.2d 104, 115 (*Mercer*).)

"When the trial court provides a statement of reasons as required by section 657, the appropriate standard of judicial review is one that defers to the trial court's resolution of conflicts in the evidence and inquires only whether the court's decision was an abuse of discretion." (*Oakland Raiders, supra*, 41 Cal.4th at p. 636.)  However, "the absence of a statement of reasons calls for independent review of the trial court's order granting a motion for a new trial." (*Id.* at p. 640.)  It also reverses the usual rule that an appellant "bear[s] the burden of persuading the appellate court that the [new trial] order should be overturned." (*Id.* at p. 641.)  Without a sufficient statement of reasons, " 'the burden is on the movant to advance any grounds stated in the motion upon which the order should be affirmed, and a record and argument to support it' [citation] and to persuade the reviewing court that the trial court should have granted the motion for a new trial.  Thus, the effect of the trial court's failure to file a statement of reasons in support of the order granting a new trial is to shift the burden of persuasion to the party seeking to uphold the trial court's order." (*Ibid.*)

Here, the trial court issued an order granting the motion for a new trial and did not enter a separate statement of reasons.  The order granted a new trial for the stated reason that the court could not "find by a preponderance of the evidence that the jury was properly instructed on the issue of notice."

12

The order does not recite the statutory ground on which the new trial was granted, as best practices dictate. However, its reference to the instructional omission indicates to us that the court granted a new trial due to an irregularity in the proceedings. (*Jones, supra*, 8 Cal.3d at p. 710.) Indeed, that is the exclusive ground discussed in Bates's supplemental trial court briefing on the topic of the instructional omission. (See *Mercer, supra*, 68 Cal.2d at pp. 110–111 [referencing new trial motion to identify ground for new trial order].) Because there is "little doubt … [of] the ground upon which the court relied," we conclude the order adequately discloses the statutory ground for the court's ruling.[5] (*Jones,* at p. 710.)

The new trial order also satisfies the statement of reasons requirement of section 657. The statement of reasons is admittedly brief, but it identifies the court's doubt that it gave the notice instruction as the basis for its ruling. We have no trouble concluding this refers to the court's failure to provide CACI No. 1103. That instruction was the sole stipulated instruction the court did not provide to the jury, it was the principal subject of two court hearings, and the parties filed multiple rounds of supplemental briefing about that specific instructional omission. Further, the order is not deficient merely because it omits a discussion of how, in the trial court's view, the

---

[5] "In so holding, … we are not to be construed as giving our approval to this or any other failure to comply unambiguously with the statutory mandate that 'the court shall specify the ground' on which the motion is granted." (*Mercer, supra*, 68 Cal.2d at p. 111.) For the trial court's benefit, we reiterate "that the statutory language, or a reasonable approximation thereof, [should] be used in all cases" in which the court grants a motion for a new trial. (*Ibid.*) As applied to the present case, the trial court should have expressly stated in its order that it was granting a new trial based on an irregularity in the proceeding.

13

instructional omission may have prejudiced Bates. (See *Treber v. Superior Court* (1968) 68 Cal.2d 128, 131 (*Treber*) ["Petitioner urges that the requirement of 'reasons' be extended to demand of the trial judge an explanation why he was of the opinion that a given error of law was prejudicial. [Citation.] It would be unreasonable … to construe section 657 as compelling the judge to set forth his 'examination of the entire cause, including the evidence,' on the face of the new trial order itself."].)

Because the order granting a new trial satisfied the requirements of section 657, albeit barely, we review the order under the traditional abuse of discretion standard and allocate the burden of persuasion to the City. (See *Oakland Raiders, supra*, 41 Cal.4th at p. 636.) " 'The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' " (*TRC Operating Co., Inc. v. Chevron USA, Inc.* (2024) 102 Cal.App.5th 1040, 1064.)

C. *The Trial Court Applied the Correct Legal Standard*

The City asks that we reverse the order granting a new trial because the trial court purportedly applied an incorrect legal standard when it ruled on the motion for a new trial. The City's argument takes two forms.

Initially, the City argues the court erred insofar as it invoked the "preponderance of the evidence" burden of proof in its new trial order. As noted, the order states, "The court cannot find by a preponderance of the evidence that the jury was properly instructed on the issue of notice." The City contends there is no legal authority for the proposition that this burden of proof applies when a court adjudicates a motion for a new trial. We reject

14

this assertion. The court referenced the burden of proof in the context of issuing its *factual determination* that it likely did not instruct the jury with CACI No. 1103. "[I]t is well established that in making factual findings, a trial court must apply the preponderance of the evidence burden of proof except in special circumstances not here involved." (*Wollersheim v. Church of Scientology* (1999) 69 Cal.App.4th 1012, 1015; see Evid. Code, § 115 ["Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."]; *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 546 ["The default standard of proof in civil cases is the preponderance of the evidence."].) Thus, the court did not err by applying the preponderance of the evidence burden of proof to its factual finding that it likely failed to instruct the jury with CACI No. 1103.

The City's second argument is that the court improperly failed to consider whether the instructional omission prejudiced Bates. In support of this claim, the City relies on the fact that the order granting the motion for a new trial does not expressly discuss the issue of prejudice. We are not persuaded. "[A] court's 'failure to "discuss" a particular standard does not imply it applied an incorrect standard. Error on appeal must be affirmatively shown by the record, and "[w]e presume the trial court knew and properly applied the law absent evidence to the contrary." ' " (*People v. Johnson & Johnson* (2022) 77 Cal.App.5th 295, 322; see also *Mercer, supra*, 68 Cal.2d at pp. 110–111 ["*every* order granting a new trial presupposes a finding that there has been 'a miscarriage of justice' "]; accord *Treber, supra*, 68 Cal.2d at pp. 131–132 [statement of reasons for order granting new trial not deficient because it failed to discuss prejudice].)

There is nothing in the order granting the motion for a new trial, or in the broader record, suggesting that the trial court failed to consider the issue

15

of prejudice. On the contrary, the court solicited supplemental briefing from the parties specifically about whether the instructional omission prejudiced Bates, and it made numerous statements during two post-verdict hearings indicating that it was torn about whether the error was prejudicial. Employing the presumption of correctness, we conclude the City has not established that the trial court applied the wrong legal standard.

D. *The Instructional Omission Did Not Prejudice Bates*

Next, the City argues the trial court erroneously granted the motion for a new trial because the instructional omission at issue could not have prejudiced Bates. We agree.

" 'A trial court has the duty to instruct the jury on the law applicable to the facts of the case.' " (*Ruckman v. Ag-Wise Enterprises, Inc.* (2025) 117 Cal.App.5th 571, 585.) In the present case, there is no dispute between the parties that the legal concept of notice set forth in CACI No. 1103 was applicable to the facts of the case and, therefore, the trial court committed error when it inadvertently failed to instruct the jury with CACI No. 1103.

When a party seeks a new trial based on an instructional omission, the movant must, in addition to showing error, establish that the error resulted in a "miscarriage of justice." (Cal. Const., art. VI, § 13.) " '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800; see *Pomona Valley Hospital Medical Center v. Kaiser Foundation Health Plan, Inc.* (2026) 119 Cal.App.5th 43, 74 [" ' "Instructional error in a civil case is prejudicial ' "[w]here it seems probable" ' that the error

16

prejudicially affected the verdict. [Citation.] It is not enough that there may have been a 'mere possibility' of prejudice." ' "].)

" '[T]here is no rule of automatic reversal or "inherent" prejudice applicable to any category of civil instructional error, whether of commission or omission.' … [¶] Prejudice 'depends heavily on the particular nature of the error, including its natural and probable effect on a party's ability to place his [or her] full case before the jury.' [Citation.] In deciding whether instructional error was prejudicial, 'the court must also evaluate (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled.' " (*McDoniel v. Kavry Management, LLC* (2025) 114 Cal.App.5th 949, 969.)

We are acutely mindful that the lower court oversaw the trial in this case, heard the parties' arguments for and against the motion for a new trial, and deliberated at length whether the instructional omission prejudiced Bates. Even so, we cannot endorse or accept the court's implied finding of prejudice, in light of the parties' statements during closing arguments, the other instructions that were given to the jury, the absence of any jury notes suggesting the jury was confused or misled by the instructional omission, and the paucity of evidence showing that the City had constructive notice of the crack or pothole that allegedly caused Bates's accident.

During closing arguments, Bates's trial counsel argued extensively to the jury that it could find the City liable for the dangerous condition on its roadway under alternative theories of actual notice or constructive notice— the same message encapsulated by CACI No. 1103. In pertinent part, Bates's trial counsel explained:

> "Did the City have notice? Clearly the City knew about this
> pothole and this dangerous condition prior to the accident. And

17

to explain notice, there's two different forms.  There's actual notice, and there's constructive notice.  And an easy way to think about it, actual notice, if you're in a grocery store and a grocery store attendant, they see a banana peel laying in the middle of an aisle, they have actual notice of this dangerous condition because they saw it themselves.  Now, for constructive notice, if you use the same example this grocery attendant doesn't see the banana peel laying in the middle of the aisle, but it's sitting there and they tell you, we have routine sweeps every 15 minutes.  We're supposed to do a sweep throughout each aisle, and then you reasonably should have known of this dangerous condition.

"So those are the two forms, actual notice and constructive notice.  Neither one holds more weight than the other.  And I don't have to prove both to you.  As long as you find one form of notice, the element is satisfied.  And we believe that there is both actual notice and constructive notice.  So we're going to go through both."

Thereafter, Bates's trial counsel presented lengthy evidence-based arguments to the jury that the City had both actual notice and constructive notice of the alleged dangerous condition on Rainbow Canyon Road.  On the topic of constructive notice, Bates's counsel argued:

"Now, Mr. Tidwell also told you that he knew of this condition of the road going back to 2014.  So eight years prior to Mr. Bates'[s] injury, the City of Temecula knew how dangerous that pothole was and that section.  And even if they didn't actually know themselves … just assume that [Tidwell] hadn't actually seen that, hadn't actually been aware of the PCI, he reasonably should have with constructive notice because when you're told this specific portion of the road is the worst possible road in the City of Temecula … that's their duty to go, and they check preventively on their own to look for dangerous conditions, and they get reports from individuals. [¶] So knowing that this specific portion of the road is the worst rated road in the city, they should have gone and inspected.  And if they did, they would have known of this pothole.  And they could have then prevented that harm."

18

Bates's trial counsel then presented further evidence-based arguments to the jury concerning why it should find the City had constructive notice of the dangerous condition. Specifically, he argued the City had constructive notice because the evidence showed the City did not have in place a reasonably adequate inspection system that would have informed the City that the roadway was unsafe.[6] After presenting all of these notice-related arguments, Bates's counsel summed up his client's position on notice by telling the jury that the City had "actual notice[] because of the PCI that [the City] saw," "constructive notice [because City officials] reasonably should have gone out to that scene[] [and] found that pothole," and "constructive notice through the unreasonable inspection system."

During the City's closing arguments, the City's trial counsel also made it abundantly clear to the jury that Bates could prove the element of notice by establishing that the City had either actual notice or constructive notice of the alleged dangerous condition. The City's counsel read CACI No. 1103 aloud to the jury and even displayed the text of the instruction in a PowerPoint presentation that was shown to the jury. Further, the City's trial counsel—like Bates's trial counsel—explained the concepts of actual notice and constructive notice for the jury. He stated, "So there's two types of notice. And we don't believe the evidence showed either for the City of Temecula. One is actual, and one is constructive. Actual is like did the City

_____

[6]  "Admissible evidence for establishing constructive notice is defined by statute as including whether a reasonably adequate inspection system would have informed the public entity, and whether it maintained and operated such an inspection system with due care." (*Heskel v. City of San Diego* (2014) 227 Cal.App.4th 313, 317, citing § 835.2, subd. (b)(1), (2).)

19

actually know about some specific thing. And constructive is we own the thing and it existed for so long that the City should have known about it."

After explaining these notice concepts to the jury, the City's trial counsel argued that the evidence did not prove the City had either actual notice or constructive notice of the crack or pothole that allegedly caused Bates's accident. With respect to constructive notice, he argued,

> "So now we move to constructive notice. So they have to prove two things, and I don't think they proved either of them. One, that the condition existed for enough time before the incident. Here's Mr. Bates's trial testimony: [¶] Question, 'So the defect your tire went into, you have no idea how or when it originated; correct?' [¶] Answer, 'Correct.' [¶] So they don't even know, whatever defects he hit, he has no idea when it originated, but yet they have to prove that it existed for enough time before the incident.

> "And then the second thing that they have to prove – and they have to prove both of these things for constructive notice – it was so obvious that the City of Temecula reasonably should have discovered the condition and known that it was dangerous. [¶] Here's Mr. Bates's own trial testimony: [¶] Question, 'And you also said that the defect that your tire went into on the day of the incident, you had not seen it before.' [¶] Answer, 'Yeah, not seen it or never noticed.' [¶] Now, remember this is not enough for them to say general conditions of the road. They have to prove a specific condition that the City knew or should have known about it. No obvious condition equals no notice. And just to remind you, there were no photos of any road defect on that date, prior to that date, no photos of any road defect until three to six months later. No measurements of any road defect. Mr. Bates is unsure of what he even hit. And then there's the – you can consider whether the City of Temecula actually had a reasonable inspection system. You'll see this instruction. But that's basically what the instruction is, Was the City's inspection system reasonable? And did they do a good job maintaining it? [¶] And so you heard testimony from [City officials]. They're hard working and experienced. They would go out and repair areas when people complained. There were no service order requests

20

for defects in that area pre-incident.  No other bicycle accident reported on Rainbow Canyon Road."

As these record excerpts demonstrate, the jury was provided with the text of CACI No. 1103 during closing arguments, informed by both parties' trial counsel of the difference between actual notice and constructive notice, and correctly apprised by counsel that Bates could satisfy his burden of proving the element of notice by establishing either actual notice or constructive notice.  The jury also heard extensive evidence-based arguments from counsel about whether the City had constructive notice of the dangerous condition.  This significantly undermines the trial court's implied finding that Bates was prejudiced by the court's inadvertent failure to instruct the jury with CACI No. 1103.[7]  (See *People v. Kenney* (2023) 88 Cal.App.5th 516, 526–527 [trial counsel's evidence-based closing arguments and recitation of the governing law during closing arguments rendered instructional omission harmless beyond a reasonable doubt]; *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1460 ["Although a counsel's closing statements do not replace the need for the court to properly instruct the jury," counsel's "clear and straightforward discussion in his closing argument made the jury aware" of the relevant legal concept notwithstanding instructional omission].)

There are several other factors that demonstrate a lack of prejudice.  Although the jury was not instructed with CACI No. 1103 ("Notice"), it was provided CACI No. 1104 ("Inspection System").  That instruction informed the jury it could consider whether the City had a reasonable inspection system when it was deciding whether the City "should have discovered the

---

[7]     Bates's appellate brief does not mention the fact that the parties' trial counsel thoroughly discussed CACI No. 1103 and the concept of constructive notice during closing arguments.

21

dangerous condition."[8]  This instruction does not alleviate the need for a court to correctly instruct the jury on notice, but it did serve to remind the jury in this case what it had read and repeatedly heard during closing arguments—that Bates could satisfy the notice element by proving the City had constructive notice of the dangerous condition.  Moreover, the record does not suggest the jury was confused by the instructions it received from the court.  The jury did not send any notes to the court requesting clarification

---

[8]     As given, CACI No. 1104 stated,

> "In deciding whether City of Temecula should have discovered the dangerous condition, you may consider whether it had a reasonable inspection system and whether a reasonable system would have revealed the dangerous condition.

> "In determining whether an inspection system is reasonable, you may consider the practicality and cost of the system and balance those factors against the likelihood and seriousness of the potential danger if no such system existed.

> "If City of Temecula had a reasonable inspection system but did not detect the dangerous condition, you may consider whether it used reasonable care in maintaining and operating the system."

about the element of notice or the apparent omission of CACI No. 1103, which was presented and thoroughly discussed during closing arguments.[9]

Further, the evidence of constructive notice was not strong. As noted above, a plaintiff seeking "[t]o establish constructive notice under [Government Code] section 835.2, subdivision (b), … must show the dangerous condition 'existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.' Put another way, '[a] claim for constructive notice has two threshold elements. [Citation.] A plaintiff must establish that the dangerous condition has existed for a sufficient period of time and that the dangerous condition was obvious.' [Citation.] 'Where the plaintiff fails to present direct or circumstantial evidence as to either element, his claim is deficient as a matter of law.' " (*Maksimow v. City of South Lake Tahoe* (2024) 106 Cal.App.5th 514, 524.)

At trial, Bates testified that he had been on Rainbow Canyon Road more than 100 times—including 40 times as a bicyclist—in the 10-month period preceding his bicycling accident. However, he admitted he had never seen or noticed the crack or pothole that purportedly caused his accident,

---

[9] In the trial court, Bates's counsel argued that the instructional omission prejudiced Bates because the jury purportedly sent a note to the court stating that the jury was "deadlocked on the notice element." The court interjected and refuted this assertion. It stated, "No, no, no. Let me make sure you're accurate. The jury was not deadlocked on the notice element. The jury was deadlocked on question number two [which stated, 'Did the dangerous condition create a reasonably foreseeable risk that this kind of injury would occur?']. … [¶] I then brought them back and read the instruction on a deadlocked jury; sent them back, and they got through question number two …. [¶] That was the question that they were deadlocked on."

23

undercutting the notion that the dangerous condition was so patently obvious the City should have discovered it. Bates also admitted on the witness stand that he had no idea when the crack or pothole originated. Indeed, based on our review of the record, it does not appear Bates presented *any* evidence establishing when this specific crack or pothole originated.

The trial court's own remarks from the post-verdict hearings corroborate our conclusion on this point. During the first hearing, the court correctly observed that "there was no evidence … that anyone saw the pothole until months" after Bates's bicycling accident, and "there was never even any indication, any proof that the pothole was even there on the day that the accident occurred." During the second hearing, the court again opined that, as to "the issue of notice, how could the City be aware if the plaintiff wasn't aware for some months [after the accident] himself, and whether that pothole was ever there at the time [of the accident]. There was no evidence establishing that it was even there at the time of the accident." Simply put, these evidentiary shortcomings, standing alone, all but doomed Bates's claim that the City had constructive notice of the dangerous condition.

In the proceedings below, Bates argued the City had constructive notice of the crack or pothole because an outside vendor gave Rainbow Canyon Road PCI scores ranging from 10 to 30, which placed the roadway in the poor to very poor category, and Tidwell has been generally aware of these PCI scores since 2014. However, the PCI scores described the *overall* condition of the entire 1.5-mile roadway, and in no way showed the City had constructive notice of the *specific* crack or pothole that allegedly caused Bates's accident. Bates's "sweeping assertion that the City 'was generally aware' of cracks in the street does not begin to establish that it had notice of the large

24

crack/pothole on [Rainbow Canyon Road] plaintiff claims caused [him] to fall." (*Restivo, supra*, 111 Cal.App.5th at pp. 275–276 [affirming summary judgment for city where plaintiff tried to prove constructive notice of pothole or crack by relying on PCI report that "provide[d] an *overall* assessment of city streets and [did] not, for any street, identify specific problems"].)

In sum, we conclude the court erred when it impliedly found that the instructional omission produced a miscarriage of justice. The City displayed the full text of CACI No. 1103 during its closing argument and read the instruction aloud for the jury. Both parties explained the concept of constructive notice and exhaustively discussed the evidence tending to prove or refute the notion that the City had constructive notice of the crack or pothole that allegedly caused Bates's accident. The court also provided the jury an instruction that discussed one of the ways the jury could find the City had constructive notice (CACI No. 1104), and the jury did not indicate to the court that it was confused or misled by the instructions it received. Further, the evidence of constructive notice was extremely thin, at best. On this record, we conclude there could be no reasonable probability that Bates would have achieved a more favorable outcome if the jury had been instructed with CACI No. 1103, and the court therefore abused its discretion in granting the motion for a new trial based on the instructional omission.

E. *The Grayscale Exhibit Did Not Prejudice Bates*

As an alternative basis to affirm the order, Bates argues the jury's receipt of a grayscale version of the PCI map for use during its deliberations constituted a prejudicial irregularity in the proceedings. We disagree.

Subject to exceptions not applicable here, "[w]e must affirm the order granting a new trial if a new trial should have been granted on any ground stated in the motion, regardless of the trial court's stated reasons." (*Bell v.*

25

*Bayerische Motoren Werke Aktiengesellschaft* (2010) 181 Cal.App.4th 1108, 1126.) "[I]f the trial court specified the grounds and reasons for granting a new trial but the order cannot be affirmed on those grounds or for those reasons, as here, the moving party bears the burden on appeal to show that the order should be affirmed on another ground stated in the motion or for reasons other than those specified by the trial court." (*Id.* at p. 1127.)

It is evident the trial court's delivery of a grayscale version of the PCI map did not cause a miscarriage of justice. As noted, Tidwell, the City's Maintenance Manager, testified about the PCI scores generally and the specific scores given to Rainbow Canyon Road. As he explained, Rainbow Canyon Road received PCI scores ranging from 10 to 30. Tidwell also testified about the meaning of those scores. He explained that roads with scores ranging from 25 to 40 are poor roadways that may need thick overlays or extensive maintenance and repairs, while roads with scores ranging from 0 to 25 are very poor roadways for which full reconstruction is recommended. Thus, to the extent Bates now argues a color-coded map would have informed the jury that Rainbow Canyon Road received an overall road rating that was poor or very poor, the color coding would have been cumulative of witness testimony already contained in the record. (See *People v. Buenrostro* (2018) 6 Cal.5th 367, 399 [exclusion of testimony harmless because it was "cumulative of other testimony"]; *In re Venus B.* (1990) 222 Cal.App.3d 931, 936 ["We have reviewed the record and find ... there would be no prejudice in that much of the omitted evidence was cumulative."].)

Further, we have no reason to believe the jury's receipt of a grayscale version of the PCI map, rather than a color-coded version, caused any jury confusion. During his testimony, Tidwell did not discuss the color-coded PCI index or the color of Rainbow Canyon Road, which theoretically could have

26

caused the jury to focus its attention on the color of the map or believe there was something unusual about the grayscale version of the map. During its deliberations, the jury did not send notes to the court stating or implying it was confused by the grayscale version of the map. Bates also did not provide admissible declarations from jurors indicating that they or any other jury members were confused by the grayscale version of the map.

For these reasons, we conclude it is not reasonably probable Bates would have obtained a more favorable verdict if the jury had received a color-coded version of the PCI map.

IV

DISPOSITION

The order granting a new trial is reversed. The matter is remanded with instructions that the trial court reinstate the verdict and enter judgment for the City of Temecula. The City of Temecula is awarded its appellate costs.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

DO, J.

27